UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY THOMAS,

          Plaintiff,                              Hon. Janet T. Neff

v.                                           Case No. 1:10-CV-331

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.
_____/

## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security granting in part and denying in part Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 51 years of age on the date his insured status expired. (Tr. 17, 82). He successfully completed high school and worked previously as a carpenter and mechanic. (Tr. 28, 97, 115).

Plaintiff applied for benefits on September 21, 2006, alleging that he had been disabled since May 26, 2003, due to back impairments. (Tr. 82-84, 96). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 48-81). On April 29, 2009, Plaintiff appeared before ALJ Michael Kennert, with testimony offered by Plaintiff and vocational expert, Kenneth Lister. (Tr. 24-46). In a written decision dated June 9, 2009, the ALJ determined that Plaintiff was disabled from May 26, 2003, through June 15, 2006, but not thereafter. (Tr. 10-19). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-4). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on March 31, 2008. (Tr. 17). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

3

## <u>RELEVANT MEDICAL HISTORY</u>

On May 26, 2003, Plaintiff reported to the Emergency Room following a motorcycle accident. (Tr. 137-42). X-rays of Plaintiff's lumbosacral spine revealed: (1) "a chronic wedge-shaped deformity of the T11 vertebra which may be developmental or due to old trauma;" and (2) "bilateral spondylosis and first degree spondylolisthesis of L5." (Tr. 140). These x-rays, however, also revealed that the "transverse processes and spinous processes are intact" and that "there are no acute compression fracture deformities." (Tr. 140). X-rays of Plaintiff's right knee were "negative" with no evidence of fracture or dislocation. (Tr. 141). X-rays of Plaintiff's right elbow were "negative" with no evidence of fracture or dislocation. (Tr. 142).

On August 22, 2003, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed: (1) "mild narrowing of the neural foramina bilaterally at the L5-S1 level with a grade one spondylolisthesis of L5 on S1 and bilateral pars interarticularis defects;" and (2) "minimal central protrusion of disc protrusion of disc material at the L4-L5 level." (Tr. 144-45).

On September 11, 2003, Plaintiff began participating in physical therapy to treat his lower back pain. (Tr. 154). On September 15, 2003, Plaintiff reported his back pain as 4/10. (Tr. 154). On September 19, 2003, Plaintiff again reported his back pain as 4/10. (Tr. 155). On September 24, 2003, Plaintiff reported "that his back feels the same." (Tr. 156). On September 26, 2003, Plaintiff reported "I went bowling last night, and that went pretty well." (Tr. 157). Physical therapy notes dated October 1, 2003, indicate that Plaintiff's participation in physical therapy had to "be placed on hold while [Plaintiff] is on his fishing trip." (Tr. 160). When Plaintiff was discharged from physical therapy on October 3, 2003, it was noted that Plaintiff "is independent with his home exercise program." (Tr. 161).

4

On February 9, 2004, Plaintiff participated in a bone scan of his lumbar spine the results of which were "normal." (Tr. 164). X-rays of Plaintiff's lumbar spine and pelvis, taken on April 14, 2004, revealed "mild" narrowing of the L4-L5 and L5-S1 disc spaces and "mild" narrowing of both hip joint spaces. (Tr. 165). These x-rays also revealed that Plaintiff's "overall bone mineralization is within normal limits." (Tr. 165).

On June 3, 2004, Plaintiff received a "right L3 and right L4 selective nerve root injection." (Tr. 174-75). On June 29, 2004, Plaintiff received a lumbar epidural steroid injection at L5-S1. (Tr. 166-67). On August 3, 2004, Plaintiff received a "right L5 selective nerve root injection." (Tr. 176-77).

On October 5, 2004, Plaintiff participated in a myelogram examination of his lumbar spine the results of which revealed the following:

> The vertebral body height are preserved throughout the lumbar spine. There is a grade I-II anterior spondylolisthesis of L5 upon S1. There is spondylolysis of the pars interarticularis at this level as well. The alignment of the vertebral body otherwise appears preserved. There is loss of the intervertebral disc space heights with associated spondylosis of the adjacent vertebral bodies to varying degrees at multiple levels within the lumbar spine. No definite ventral extradural defects are noted upon the thecal sac. No intradural abnormalities are seen. The exiting nerve roots are unremarkable.

(Tr. 168-69).

On October 19, 2004, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed the following: (1) L5 spondylolysis bilaterally with a first degree L5-S1 spondylolisthesis; (2) degenerate disc changes from L2 to S1; and (3) a posterior concentric L4-5 disc bulge without spinal stenosis. (Tr. 170).

On October 21, 2004, Plaintiff participated in an electromyographic and nerve conduction examination of his right lower extremity the results of which were "within normal limits and specifically does not show evidence for lumbar radiculopathy." (Tr. 173).

On November 16, 2004, Plaintiff received a "right L4, right L5, and right S1 selective nerve root injection." (Tr. 178-79).

On February 15, 2005, Plaintiff underwent spinal decompression and fusion surgery performed by Dr. Kimball Pratt. (Tr. 180-87). Specifically, Plaintiff underwent "L5 laminectomy and decompression of L5 nerve roots bilaterally with L5-S1 posterolateral fusion and use of Legacy instrumentation system." (Tr. 188).

On May 6, 2005, Plaintiff reported to Dr. Pratt that "he is doing significantly better" and that "the severe pain that he was having [in] his buttocks is resolved." (Tr. 324). X-rays of Plaintiff's lumbar spine revealed the following:

> Grossly stable postoperative change status post L5-S1 pedicle screw fusion. The grade two spondylolisthesis at L5-S1 is stable, and no significant relative motion or other changes are noted with lateral, flexion and extension maneuvers. Stable, mild L3-4 and L4-5 spondylosis.

(Tr. 207).

Treatment notes dated August 15, 2005, reveal that Plaintiff "is doing quite well." (Tr. 320). X-rays of Plaintiff's lumbosacral spine revealed "stable radiographic examination of the lumbar spine with grade two spondylolisthesis and posterior fusion at L5-S1." (Tr. 250).

On November 16, 2005, Dr. Pratt reported that Plaintiff "has made a good recovery" and is "working with rehabilitation at [this] time attempting to get him back to a full work status." (Tr. 316). The doctor noted that Plaintiff previously worked as a carpenter and that she "was unaware

that [Plaintiff's former employer] would be willing to take him back with restrictions and that is why he [has] not been back to work." (Tr. 316).

On December 7, 2005, Plaintiff was examined by Dr. Harrison Johnson. (Tr. 314-15). Plaintiff reported experiencing lower back pain. (Tr. 314). Plaintiff denied experiencing weakness and reported that his current medication regimen has "helped him to manage with his pain." (Tr. 314). Plaintiff experienced "some" pain to palpation of his back and exhibited limited range of motion. (Tr. 315). The doctor concluded that Plaintiff required physical therapy to facilitate "lumbar stabilization." (Tr. 315). Plaintiff then asked Dr. Johnson if he "was allowed to go bowling." (Tr. 315). The doctor instructed Plaintiff that "it would be ok to bowl as long as he did use proper body mechanics." (Tr. 315).

On February 13, 2006, Dr. Pratt reported that Plaintiff "has had significant improvement in his leg discomfort that he had preoperatively." (Tr. 310). The doctor noted that Plaintiff "still has back tenderness...but no radicular radiation." (Tr. 310). X-rays of Plaintiff's lumbosacral spine revealed "stable fusion of L5-S1." (Tr. 252). On February 23, 2006, Plaintiff participated in a CT scan of his lumbar spine the results of which revealed "satisfactory postoperative CT appearance of the lumbar spine." (Tr. 425).

On February 27, 2006, Plaintiff was examined by Dr. Randolph Russo. (Tr. 253-58). Plaintiff reported experiencing lower back pain which extended into both buttocks. (Tr. 253). Plaintiff walked "with a normal gait pattern" and was able to walk "on his toes and heels without evidence of weakness." (Tr. 254). There was also no evidence of foot drop and Trendelenburg's

sign[1] was negative. (Tr. 254). An examination of Plaintiff's spine revealed tenderness, but there was no tenderness in Plaintiff's buttocks or sacral region. (Tr. 254). Muscle testing revealed no evidence of atrophy. (Tr. 254).

Dr. Russo concluded that "the symptoms [Plaintiff] continues to experience across the lumbosacral spine are consistent with degenerative back pain." (Tr. 258). The doctor further noted, however, that Plaintiff "is neurologically intact without evidence of lumbosacral radiculopathy." (Tr. 258). The doctor also noted that while Plaintiff "provides a history of dramatic functional limitations," he "cannot explain the reasons for the significant level of functional limitation." (Tr. 258). Instead, the doctor concluded that "returning [Plaintiff] to functional activity is necessary." (Tr. 258). Accordingly, Dr. Russo concluded that:

> Taking into account that [Plaintiff] is experiencing some back pain, I would place him at a physical limitation of a light to medium physical demand level. This is consistent with a middle-aged individual who has had a one-level lumbar fusion. This would put him out of work as a union carpenter, if he is lifting over 33 pounds and performing repetitive bending and lifting-type activities.

(Tr. 258).

On March 23, 2006, Plaintiff participated in a functional capacity evaluation. (Tr. 422-24). Plaintiff exhibited 50 to 80 pounds grip strength with his right hand and 55 to 80 pounds grip strength with his left hand. (Tr. 423). The examiner observed that Plaintiff "does have functional grasp strength for all activities." (Tr. 423). Plaintiff exhibited "no limitations in fine motor coordination." (Tr. 423). Plaintiff was able to sit for 45 minutes without limitation and was

---

[1] Trendelenburg's test is "a test of the valvular competence of the leg veins in which the leg is raised above the level of the heart until the veins are empty and then the leg is rapidly lowered." *See* Trendelenburg's Test, available at http://medical-dictionary.thefreedictionary.com/Trendelenburg's+test (last visited on August 25, 2011).

able to stand and or perform activities requiring upright posture for greater than 45 minutes.  (Tr. 423).  With respect to his ability to walk, Plaintiff reported that "he has walked as far as one mile while hunting with friends."  (Tr. 423).  Plaintiff was able to lift 10 pounds occasionally and a maximum of 20 pounds.  (Tr. 423).  Plaintiff was also able to carry an eight foot ladder 200 feet "without difficulty."  (Tr. 423).  Plaintiff was able to perform "sustained overhead" activities for five minutes.  (Tr. 423).  Plaintiff was able to push a maximum of 20 pounds.  (Tr. 424).  The examiner concluded that while Plaintiff exhibited "signs of symptom amplification...the test results appear to be valid reflections of [Plaintiff's] abilities."  (Tr. 424).

Treatment notes dated June 15, 2006, indicate that Plaintiff is "doing better with pain management."  (Tr. 296).  Plaintiff exhibited 5/5 strength, "full" range of motion upon flexion, and "little complaint of pain with palpation."  (Tr. 296).

On September 11, 2006, Dr. Pratt reported that Plaintiff "has low back pain," but that his leg pain "has essentially resolved."  (Tr. 290).

On November 10, 2008, Plaintiff reported to Dr. Stempky that "he is doing fine" with "no significant problems."  (Tr. 445).

On February 12, 2009, Dr. Stempky completed a report regarding Plaintiff's ability to perform physical activities.  (Tr. 438-41).  The doctor reported that Plaintiff could sit for 10 minutes but was unable to stand or walk any length of time.  (Tr. 438).  The doctor reported that Plaintiff can frequently lift/carry five pounds and occasionally lift/carry 10 pounds.  (Tr. 438).  The doctor reported that Plaintiff can frequently reach above shoulder level with either of his upper extremities, but can only occasionally stoop, squat, kneel, crouch, and climb ramps or stairs.  (Tr. 439).  The doctor reported that Plaintiff experiences no limitations in the use of his hands.  (Tr. 439).

At the administrative hearing, Plaintiff testified that he was prescribed a back brace, but that he was not wearing it.  (Tr. 33-34).  Plaintiff reported that he takes out the garbage, mows the lawn, gardens, and performs minor household repairs.  (Tr. 35-36).  Plaintiff also reported that "two weekends a month during the summer" he goes camping and also goes ice fishing during the winter.  (Tr. 37).  Plaintiff reported that he was able to sit for "quite a while."  (Tr. 38).  Plaintiff also reported that he could lift approximately 40 pounds.  (Tr. 38).

## ANALYSIS OF THE ALJ'S DECISION

The Social Security Act provides that disability benefits may be terminated if "the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling."  42 U.S.C. § 423(f).  Termination of benefits must be supported, however, by substantial evidence that (1) there has been medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (2) the individual is now able to engage in substantial gainful activity.  *See* 42 U.S.C. § 423(f)(1)(A)-(B); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994); *Niemasz v. Barnhart*, 155 Fed. Appx. 836, 840 (6th Cir., Nov. 18, 2005) ("[o]nce an ALJ finds a claimant disabled, he must find a medical improvement in the claimant's condition to end his benefits, a finding that requires 'substantial evidence' of a 'medical improvement' and proof that he is 'now able to engage in substantial gainful activity'") (quoting 42 U.S.C. § 423(f)(1)).

The social security regulations articulate an eight-step sequential process by which determinations of continuing disability are made.[2]  *See* 20 C.F.R. §§ 404.1594, 416.994.  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  The steps of this sequential process are as follows:

(1)     Is the individual engaging in substantial gainful activity;

(2)     Does the individual have an impairment or combination of impairments which meets or equals in severity an impairment identified in the Listing of Impairments;

(3)     Has the individual experienced a medical improvement;

(4)     Is the improvement related to the individual's ability to perform work (i.e., has there been an increase in the individual's residual functional capacity based on the impairment(s) present at the time of the most recent favorable medical determination);

(5)     If the individual has either not experienced a medical improvement or any such improvement is unrelated to his ability to perform work, do any of the exceptions to the medical improvement standard apply;

(6)     Does the individual suffer from a severe impairment or combination of impairments;

(7)     Can the individual perform his past relevant work;

(8)     Can the individual perform other work;[3]

*Id.*

Furthermore, when the Commissioner evaluates whether a claimant continues to qualify for benefits, the claimant is not entitled to a presumption of continuing disability.  *See Cutlip*,

---

[2]  This eight-step sequential process clearly applies in cases where a claimant, previously found to be disabled, is later found to be no longer be disabled.  This sequential process also applies in closed benefits cases such as this, where the finding of disability and termination of disability are rendered in the same decision.  *See Niemasz*, 155 Fed. Appx. at 836-40.

[3]  While not expressly stated in the regulations, it is clear that "other" work refers to work which exists in significant numbers.  *See*, *e.g.*, *Mote v. Shalala*, 1995 WL 358636 at *12 (N.D.Ind., May 12, 1995).

25 F.3d at 286.  Rather, the decision whether to terminate benefits must "be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition."  *Id.*

The ALJ determined that Plaintiff suffers from degenerative disc disease of the lumbar spine with spondylolisthesis of L5 on S1, post L5-S1 fusion, a severe impairment that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 17).  The ALJ found that from May 26, 2003, through June 15, 2006, Plaintiff "lacked the residual functional capacity to perform work at any exertional level."  (Tr. 18).  The ALJ further concluded, however, that as of June 15, 2006, Plaintiff experienced a medical improvement in his condition.  (Tr. 13).

The ALJ found that Plaintiff's improvement was related to his ability to work as such resulted in an increase in his residual functional capacity.  (Tr. 13-16).  Specifically, the ALJ determined that as of June 15, 2006, Plaintiff, still suffering from the aforementioned severe impairment, was capable of performing a limited range of light work.  (Tr. 16).  Specifically, the ALJ found that as of June 15, 2006, Plaintiff retained the ability to perform work activities subject to the following restrictions: (1) he can lift/carry a maximum of 20 pounds and can lift/carry 10 pounds frequently; (2) he can stand and/or walk for six hours during an 8-hour workday; (3) he can sit for six hours during an 8-hour workday; (4) he can push and pull (including hand or foot controls) within the previously mentioned lifting and carrying limitations; and (5) he can only occasionally climb, balance, stoop, kneel, crouch, and crawl.  (Tr. 16).  Relying on the testimony of a vocational expert, the ALJ found that while Plaintiff was unable to perform his past relevant work there existed a

significant number of jobs he could perform despite his limitations.  Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

> a.      The ALJ Properly Evaluated the Medical Evidence

As previously noted, on February 12, 2009, Dr. Stempky reported that Plaintiff could sit for 10 minutes but was unable to stand or walk for any length of time.  The doctor also reported that Plaintiff can only lift/carry 10 pounds occasionally and five pounds frequently.  Plaintiff asserts that because Dr. Stempky was his treating physician, the ALJ was obligated to afford controlling weight to his opinions.[4]

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'"  *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235

---

[4]  Plaintiff also asserts that the ALJ was obligated to afford controlling weight to Dr. Stempky's "opinion" that Plaintiff reported that he was experiencing work-preclusive pain.  Recognition by a treating physician of a patient's subjective allegations does not constitute a medical opinion to which deference is entitled.  Likewise, Plaintiff's claim that the ALJ was obligated to defer to Dr. Stempky's conclusion that Plaintiff was "unable to work" is without merit as determinations as to disability are left to the Commissioner.  *See* 20 C.F.R. § 404.1527(e)(1).

n.1 (6th Cir. 1987)).   The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Wilson*, 378 F.3d at 544.  In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors.  *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544.  The ALJ is not required, however, to explicitly discuss each of these factors.  *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).  Instead, the record must reflect that the ALJ considered those factors relevant to her assessment.  *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

The ALJ found that he "cannot credit" Dr. Stempky's opinion because "[f]unctional limitations of the severity posited by Dr. Stempky are not supported by the objective findings of the medical record and are inconsistent with the remainder of the medical evidence, particularly including the opinions of the claimant's treating specialists at Shoreline Neurosurgery, Dr. Pratt and Dr. Johnson." (Tr. 16).  As detailed above, the extreme limitations expressed by Dr. Stempky enjoy no support in the medical record and are in conflict with the findings and opinions articulated by Dr.

14

Pratt and Dr. Johnson, specialists with a lengthy treatment history with Plaintiff.  As detailed above, the medical record reveals that Plaintiff's February 2005 back surgery was quite successful, as evidenced by Plaintiff's performance during a March 23, 2006 functional capacity examination as well as Plaintiff's reported post-surgery activities which include hunting, camping, bowling, ice fishing, and various household activities.  In sum, there exists substantial evidence to support the ALJ's decision to discount Dr. Stempky's opinion.

Plaintiff also asserts that the ALJ failed to afford sufficient weight to "Dr. Pratt's opinions regarding [his] limitations in the amount of time he can sustain work activity."  (Dkt. #10 at 4).  Plaintiff has failed, however, to identify the opinion in question or its location in the administrative record.  As Plaintiff bears the responsibility to clearly articulate the basis for his claims of error this failure is fatal to this particular claim.  *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same).  The Court further notes that, as the ALJ correctly observed, Dr. Pratt's treatment notes support the ALJ's conclusion that Plaintiff's back surgery was successful and ultimately enabled Plaintiff to perform a limited range of work activities consistent with his RFC.  Accordingly, this argument is rejected.

b.      The ALJ Properly Discounted Plaintiff's Subjective Allegations

Plaintiff next asserts that the ALJ improperly discounted his subjective allegations. At the administrative hearing, Plaintiff testified that he was unable to work due to back pain which radiated into his right lower extremity.  (Tr. 32-33).  Plaintiff reported that "without any physical activity," his back pain rated 6/7 out of 10 and with "some physical activity" his back pain increased to 9-10 out of 10.  (Tr. 40).  The ALJ discounted Plaintiff's subjective allegations, concluding:

> Insofar as the claimant alleges symptoms and functional limitations after June 15, 2006, that would preclude his performing the activities described in the residual functional capacity found for him, such allegations are disproportionate to the objective findings of the medical record, inconsistent with the medical opinion evidence, exaggerated, and not fully credible.

(Tr. 16).

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same).  As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009).  Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

16

> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted).  This standard is often referred to as the *Duncan*

standard.  *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July

29, 2004).

 Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may

support a finding of disability only where objective medical evidence confirms the severity of the

alleged symptoms."  *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).

However, where the objective medical evidence fails to confirm the severity of a claimant's

subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to

resolve the significant conflicts in the administrative record."  *Workman*, 105 Fed. Appx. at 801

(citing *Walters*, 127 F.3d at 531).

 In this respect, it is recognized that the ALJ's credibility assessment "must be

accorded great weight and deference."  *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d

at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t

is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the

witnesses and weigh and evaluate their testimony").  It is not for this Court to reevaluate such

evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must

stand.  The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should

not be lightly disregarded.  *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th

Cir. 1987).

 It is not disputed that Plaintiff suffers from severe impairments.  However, as the ALJ

recognized, Plaintiff experienced a significant improvement in his condition following his motorcycle

accident.  As of June 15, 2006, Plaintiff's condition had improved such that his ability to perform work activities had significantly increased.  While Plaintiff's subjective complaints prior to June 15, 2006, were properly found to be credible, his subjective allegations of work-preclusive impairments and limitations after that date enjoy no support in the record.  As the ALJ concluded, such allegations are inconsistent with the medical evidence, including the observations and opinions of his treating physicians Dr. Pratt and Dr. Johnson.  Plaintiff's subjective allegations are likewise contradicted by his wide range of reported activities.  In sum, the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

### c.       Plaintiff is not Entitled to Remand

In support of his arguments in this Court, Plaintiff has attached to his brief evidence that was not presented to the ALJ.  (Dkt. #10).  This Court, however, is precluded from considering such material.  *See Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996); *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007).  If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered.  *Cline*, 96 F.3d at 148.  To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence.  *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

While Plaintiff makes reference to this additional evidence in his pleading, he has failed to request a remand so that this evidence can properly be considered.  Likewise, Plaintiff has

failed to argue that he satisfies the aforementioned standard to obtain such a remand.  The Court, therefore, finds that Plaintiff has waived any argument that this matter be remanded for consideration of the additional evidence included with his brief in this Court.  *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same).

Even if Plaintiff had not waived this argument, the result would be the same.  This new evidence consists of nothing more than a series of "off work" slips.  These documents reveal nothing about Plaintiff's impairments and the extent to which such limit his ability to perform work activities.  It is not reasonable to assert that consideration of this material by the ALJ would have led to a different result.  Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

### d.    The ALJ Properly Assessed Plaintiff's Age

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience.  20 C.F.R., Part 404, Subpart P, Appendix 2.  Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled."  20 C.F.R., Part 404,

Subpart P, Appendix 2, § 200.00.  In other words, a claimant may be awarded benefits if he satisfies the requirements of one of the particular rules correlating to a finding of disability.  *See Russell v. Commissioner of Social Security*, 20 F. Supp.2d 1133, 1134 (W.D. Mich. 1998).

Plaintiff asserts that because he was "over 49 ½ years old" in September 2006, the ALJ "could have placed [him] for consideration under the grid section for [a] person approaching advanced age."  The Court is puzzled by this argument, as the ALJ did precisely what Plaintiff requests.  The ALJ found that: (1) Plaintiff was a high school graduate; (2) his past relevant work was skilled or semi skilled, but that such skills were not transferable; and (3) that he could perform a range of light work.  (Tr. 18).  Taking into account these particular vocational factors, the ALJ consulted the grids assuming Plaintiff was both a younger individual and a person closely approaching advanced age.  (Tr. 18).  As the ALJ recognized, in both circumstances the grids result in a conclusion that Plaintiff is "not disabled."  *See* 20 C.F.R., Part 404, Subpart P, Appendix 2, §§ 202.14, 202.21.  This argument is, therefore, rejected.


## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence.  Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  August 30, 2011

  /s/ Ellen S. Carmody                       
ELLEN S. CARMODY
United States Magistrate Judge

21